WALTER DOBBINS, Appellee, v. TODD & KRAFT COMPANY et al., Appellants.

No. 42500.

September 25, 1934.

Brammer, Brody, Charlton & Parker, for appellants Todd & Kraft Co. and H. B. Schwaegler.

Hall & Mitchell and Clinton R. Dorn, for appellee.

Guy S. Calkins, for L. J. Essex and National Detective Bureau.

Evans, J.—The defendant Todd & Kraft Company is a corporation located in Des Moines and engaged in the wholesale fruit business. The defendant H. B. Schwaegler is its president. The defendant National Detective Bureau is a trade-name for the defendant L. J. Essex. This latter defendant purported to be a private detective. The particular line of work which he purported to do was to ferret out dishonest conduct, including larcenies by employees from their employers, and to expose the same. Prior to the events under consideration herein, he entered into a contract with the defendant Todd & Kraft Company to make an investigation of its employees and to discover such misfeasance as he could and to report the same to such defendant. He did discover misfeasances on the part of two employees of such defendant, and the grievances complained of in this suit arose out of that discovery. The employees were Bierworth and Allen, each of whom confessed his wrongdoing in

writing. The plaintiff, Dobbins, was a customer of such defendant. The confessions of the employees involved the plaintiff in the wrong-doing. Upon being confronted with those confessions, the plaintiff himself confessed. Allen was a truck driver for Todd & Kraft Company. His business was to deliver the parcels to customers. Bierworth was engaged in the store. It was his business to wrap the parcels and to hand them to Allen for delivery duly marked wi.h the name of the customer. Allen and Bierworth conceived the idea of defrauding their employer in this wise: Bierworth would deliver to Allen's truck parcels duly wrapped but not marked for any particular customer. Allen would dispose of the parcel as best he could at reduced prices and divide the proceeds with Bier-worth. One of the recipients of these parcels was the plaintiff, ac-cording to the confessions of all of them. The evidence on behalf of the defendants was that the plaintiff made an estimate of the amount obtained by him in such manner and fixed such amount at $500, which he paid. In the meantime he had been arrested before a justice of the peace, Davis, defendant herein. The information had been filed by defendant Essex. Upon payment of $500 estimated by the plaintiff, the prosecution was withdrawn. A short time there-after the plaintiff repudiated his confession and brought this action for damages. His petition is in two counts. However, the pleading and the evidence disclose only one cause of action, and not two, as set forth in both purported counts. The two purported counts differ in the items of damage claimed for. The only item of damage mentioned in the purported count 1 is the item of $500 which de-fendant Essex had exacted from the plaintiff. The purported count 2, added two items of damage, viz: $5,000 for loss of reputation and mental anguish, and $5,000 exemplary damages. The purported count 1 contained no prayer for judgment. Purported count 2 prayed judgment for the three items in the total amount of $10,500. All the allegations which set forth the wrongdoing of the defend-ants were included in both purported counts. The instructions con-tained specific reference to "count 1" but made no specific refer-ence to "count 2". If either of these alleged counts had been prose-cuted to judgment as a separate action, such judgment would have been a bar to further recovery on the other count. The action therefore embraces but one cause, and is essentially an action for damages for malicious prosecution. Two items of actual damage and one of exemplary damage are specified. The defendants are

charged with joint liability for all such damage, as alleged conspirators. The jury made no fact finding of a conspiracy. Five separate verdicts were rendered as follows:

1. One verdict for $2,000 against Essex and the National Detective Bureau, which was the trade-name under which Essex operated. It had no other existence;

2. A separate verdict for $1,000 against Todd & Kraft Company;

3. A separate verdict for $1,000 against Schwaegler;

4. A separate verdict for $500 against Davis.

5. A separate verdict for $500 against the American Surety Company.

The two verdicts against Davis, justice of the peace, and against his surety, American Surety Company, were set aside by the trial court. No appeal was taken either by Essex or by his trade-name, National Detective Bureau. We have to consider, therefore, only the appeal of Schwaegler and Todd & Kraft Company.

In our foregoing recital of facts we intend only to say that there was evidence to such effect.

II. The court instructed the jury that, in order to recover, as against any two or more of the defendants, the plaintiff must prove the alleged conspiracy as against said defendants. It also directed a verdict for all other defendants. The implication of the verdict, as rendered, was that only Essex and his Bureau were guilty of a conspiracy, and that the other defendants were guilty only of something less. What the legal effect of the verdicts, as rendered, was, is a perplexing question upon the record, and we do not find it necessary to enter upon it.

III. One of the complaints urged upon us by the appellants is that the instructions of the court on certain features of the record were vitally inconsistent with each other, and we give our first consideration to that question.

Instruction No. 4 was as follows:

"The burden of proof in this case is on the plaintiff, and before he can recover against the defendants on Count 1 of his petition he must prove by a preponderance of the evidence that the defendants conspired and confederated together for the purpose of unjustly extorting money from plaintiff and that in pursuance of such confederation and conspiracy the defendants, Todd & Kraft Company and H. B. Schwaegler authorized and directed the defendant

L. J. Essex as their agent to file an information in the justice court of W. H. Davis, accusing plaintiff of the crime of buying and receiving stolen property and have him arrested and imprisoned, and threatened to further prosecute and imprison plaintiff unless he paid the sum of $500.00, substantially as alleged by plaintiff in Count 1 of his petition, and that he yielded to such demands and threats to extort and further prosecute him, and thereafter paid the sum of $500.00, as alleged by him in his petition.

"If you find from the preponderance of the evidence that there was a conspiracy combination agreement or plan entered into between the defendants for the purpose of unjustly extorting money from plaintiff, and thereupon the Todd & Kraft Company and H. B. Schwaegler caused L. J. Essex to file an information, charging plaintiff with an offense, and thereafter causing his arrest and imprisonment, and that such charge was filed and plaintiff was arrested for the purpose of enforcing the collection of a money demand claimed to be due Todd & Kraft Company as the value of goods stolen from them and purchased by plaintiff at reduced prices from the drivers of Todd & Kraft Company with the full knowledge on the part of plaintiff that they were stolen, and that such prosecution, arrest and imprisonment were had and threats made, *not for the purpose of a good faith prosecution* where it was sought to punish someone for an offense committed under the laws of the state, but was all done for the purpose of extorting money from plaintiff for a claim that the defendants Todd & Kraft and H. B. Schwaegler knew or had reason to believe that the claim was unjust, if you so find, then, as to Count 1 of plaintiff's petition you should find for the plaintiff."

In instruction No. 16 the court charged:

*"That there was nothing unlawful on the part of the said Todd & Kraft Company or the said H. B. Schwaegler in authorizing the filing of an information against Walter Dobbins and causing his arrest pursuant to such information so filed, providing that such information was not filed for the purpose of extorting money from the said Walter Dobbins, as claimed by plaintiff, or that it was filed in good faith and that they had reasonable ground for believing plaintiff had committed a public offense, as will be hereinafter instructed."*

Instruction No. 18 imposed upon the plaintiff the burden to prove:

"That the information filed in the Justice of the Peace court of W. H. Davis was false and untrue and *that it was known by the defendants to be false* and untrue at the time it was filed, that it was filed because of a conspiracy entered into between the defendants for the purpose of extorting money from the plaintiff and causing his unlawful arrest and imprisonment, substantially as alleged by plaintiff.

"Or, that there was no reasonable ground or probable cause for believing that the plaintiff had committed a public offense."

Instruction No. 10 instructed the jury as follows:

"Accordingly, if you find that the $500.00 was paid in this case in settlement of the account of $84.42 then owing to Todd & Kraft Company by the said Walter Dobbins for merchandise purchased in the regular way, and also because of the claim of Todd & Kraft Company to recover the value of merchandise purchased by the said Walter Dobbins from Glenn Allen, which merchandise Todd & Kraft Company claimed had been stolen from it, you are instructed that your verdict on Count 1 should be for the defendants Todd & Kraft Company and H. B. Schwaegler, and you should so find regardless of whether or not the amount of said claim could have been established precisely, if in fact, said claim was asserted by the said Todd & Kraft Company and the said H. B. Schwaegler, *honestly and in good faith.*

"If, however, said payment was made, as heretofore instructed, and induced by the criminal information filed and the following arrest and the threats of further prosecution if payment was not made, then the fact that such claim was asserted by the said Todd & Kraft Company and H. B. Schwaegler *in good faith would be no defense for plaintiff's recovery on Count 1 of his petition.*"

From the foregoing it will be seen that by instruction No. 4 the burden was laid upon the plaintiff to show that the arrest of the plaintiff had been made "not for the purpose of good faith prosecution"; that by instruction No. 16 the same burden of proof was laid upon the plaintiff; that by the major part of instruction No. 10 the burden was laid upon the plaintiff to prove that the defendants did not act honestly or in good faith; yet the pronouncements

in the foregoing instructions were all struck down and rendered nugatory by the last sentence in instruction No. 10 where it was declared that "good faith would be no defense."

In this class of actions for malicious prosecution it has been the settled rule of law for many years that the burden is upon the plaintiff in such action to prove (1) want of probable cause or reasonable grounds of belief, and (2) *malice*. A failure of proof as to either of these elements is fatal to the plaintiff's case. Pierce v. Doolittle, 130 Iowa 333, 106 N. W. 751, 6 L. R. A. (N. S) 143. Such rule is controlling in this case. The instructions did not set forth this rule in specific terms. They did state that the burden was upon the plaintiff to prove that the information filed against the plaintiff was not an honest and good-faith prosecution. The language thus adopted by the court was undoubtedly intended as a compliance with the rule of law above stated herein. Whether it was an adequate compliance with it we need not determine. We shall so treat it for the purpose of this discussion. Assuming that the terms used by the court, as set forth in the foregoing quotations from instructions, 4, 16, and 10, could be properly construed by us as a substantial recognition of the rule stated, yet it availed nothing to the defendants because of the closing words in instruction No. 10. This closing sentence wholly nullifies all that was said on that subject both in instruction No. 10 and the other instructions. We see no escape from saying that this latter portion of the instruction was wholly inconsistent with the instructions as a whole as well as inconsistent with the earlier statements in instruction No. 10. If the burden was on the plaintiff to prove the *absence of good faith and honesty,* as stated in the various instructions, or if the burden was upon the plaintiff to prove both malice and want of probable cause, or reasonable grounds of belief, as required by the established rule above stated, then how could it be said that good faith of the defendant was no defense; and why should it be implied that there was any burden of affirmative defense upon the defendant whatever? Such was the implication of the last clause of instruction No. 10. This proviso complained of eliminated wholly from the instructions any recognition of the settled rule, which we have here noted. The statement was erroneous, not only as an inconsistency, but was erroneous in and of itself as a statement of the law, and was necessarily prejudicial.

We have no occasion, therefore, to consider other assignments. The judgment below is accordingly reversed.

All Justices concur.